The H. W. GOSSARD CO., Plaintiff-
Appellant,

v.

J. C. PENNEY COMPANY, Defendant-
Appellee.

No. 13621.

United States Court of Appeals
Seventh Circuit.

June 22, 1962.

Arthur C. Johnson, Edward C. Grelle, Chicago, Ill., Donald Malcolm, New York City, Brown, Jackson, Boettcher & Dienner, Chicago, Ill., of counsel, for appellant.

Samuel W. Kipnis, Chicago, Ill., Armand E. Lackenbach, New York City, for appellee.

Before DUFFY, MAJOR and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

This is a suit alleging infringement of Doyle United States Patent No. 2,803,-822 for a foundation garment, issued August 27, 1957. The District Court held the patent to be invalid but did not pass upon the question of infringement. The judgment recited the patent "is invalid because it does not disclose invention, and claims 1 to 4, inclusive, of said patent are invalid and void."

Plaintiff is the manufacturer of a line of women's undergarments. Defendant is engaged in wide-spread merchandising activities including the sale of women's undergarments. Crescent Corset Company (Crescent) is the manufacturer of foundation garments which were sold by Penney, and Crescent is conducting the defense in this suit for defendant.

Crescent had plaintiff's commercial foundation garment before it when it designed the garments it furnished to Penney. It is admitted in this case that the accused garment is a copy of plaintiff's commercial garment.

The garment shown in the patent in suit comprises a main body portion or sheath defined by front and back panel sections, each composed preferably of

light-weight, two-way stretch elastic material for encircling the body of the wearer from the waist downwardly below the hips. Two arrow-shaped bands are stitched on the inside of the front panel of the garment. These bands are composed of strips of elastic fabric each stretchable in a longitudinal direction only. They are converging strips which meet in an apex like an arrow. One of said bands has its apex adjacent to the center of the front section below the top and its divergent arms extend upwardly and are secured at their ends to the respective sides of the garment adjacent to the top thereof.

The other of the arrow-shaped bands has its apex adjacent to the top of the front section and above the apex of the first band and has its divergent arms extending downwardly across the arms of the first band, and is secured at the ends to the respective sides of the garment below the hip line and in the region adapted to overlie the thighs. The patent calls for the two bands being connected along substantially all of their edges to the front section of the garment.

The patent in suit further discloses a third arrow or V-shaped band composed of one-way stretch material. This band is stitched substantially along the edges of the band to the back portion of the garment.

Plaintiff stresses that the garment of the patent in suit conforms in its mode of operation to the functioning of muscles of the female human torso. No such statement appears anywhere in the patent. However, the patent does state "These one-way stretch lining bands cooperate with the two-way stretch body portion of the garment to lift the abdomen and control the hips and thighs, and the overlapping portions of said bands, being stitched together and thus being non-stretchable where overlapped in the region of the abdomen, exert an additional flattening effect on the uplifted abdomen. * * *"

Plaintiff relies heavily upon commercial success. The proof shows that plaintiff and a fully owned subsidiary, for a period beginning in 1957 and extending through August 25, 1961, sold 2,497,464 garments, having a wholesale value of $16,671,118. The total sales of the patented garment compared with the total sales of all garments regularly sold by plaintiff, amounted to 17.2% in the fiscal year 1957, but increased to 42.6% in the fiscal year 1960; and for the fiscal year 1961, beginning December, 1960, until August 25, 1961, such sales represented 41.7% of the total.

The District Court found that the feature of the claimed invention, which plaintiff insists is an advance over the prior art, is the convergent strips of arrow-shaped bands secured by stitching to the garment sections and which strips were made of elastic material and each stretchable in a longitudinal direction only. The District Court found such bands were well known in the prior art and were specifically disclosed in patents to Levy, No. 2,458,279 and Imershein, Re. 21,595. Neither Levy nor Imershein patents were a patent office reference.

The history of the application of the patent in suit shows there was one official action on February 25, 1957, in which the Examiner rejected all the claims originally submitted as substantially met by Oriano French Patent No. 1,106,002. The attorney prosecuting the application for the patent, presented an amendment cancelling all the claims originally presented, and substituting therefor the four claims which were finally issued in the patent. Each of such claims was limited to defining the strips of the converging strips of fabric as being stretchable in a longitudinal direction only. The attorney argued that the Oriano French Patents 1 and 2 were all "believed to be of two-way stretch elastic."

There is nothing in the Oriano patent which limits the Oriano patents to a two-way stretch elastic. Oriano speaks of elastic fabric rubber bands which ordinarily are stretchable in a longitudinal direction.

Whether or not the Oriano patent was limited to a two-way stretch elastic is not

of prime importance. It would seem that if the Patent Examiner had considered along with the Oriano patent, the Levy and the Imershein patents which were limited to bands stretching longitudinally only, it is doubtful that the patent would have issued.

The patentee utilized the common teachings of the prior art, but she did relocate to some extent, the various arrow-shaped bands. In doing so, patentee did nothing that could not have been accomplished by the ordinary person skilled in the art. What patentee did undoubtedly required some skill, but what she did cannot be said to rise to the dignity of an invention.

In the prior art, chevron-shaped lining bands of one-way longitudinal stretchable fabric have been used for many years. This was done in the art for the same purpose and affected substantially the same result as the patent in suit, that is, to mold and support the figure. If there were any novelty in the relocation of such bands, the change in location did not amount to a patentable invention.

In Hamilton Manufacturing Company v. Illinois Surgical Supply Company, 7 Cir., 193 F.2d 938, this Court held (page 942): "The improvement which was achieved was merely the relocation of old elements, which we think was well within the sphere of the skilled artisan or mechanic, and certainly under repeated decisions of the Supreme Court as well as this court does not rise to the status of a patentable invention."

Another pertinent decision was by the Second Circuit in Warner Bros. Company v. American Lady Corset Company, 2 Cir., 136 F.2d 93. This involved the well known patent to Field, No. 1,995,801 granted March 26, 1935. This patent was for the first "two-way stretch girdle" ever placed on the market and had a very wide acceptance. After some years, the patent was challenged. The patent was for a garment consisting of panels of elastic fabric, some panels stretching one way and others another. The advantage claimed was confining and flattening at various portions of the garment, somewhat similar to the claims of the patent in suit. The entire garment was described as constituted of various panels having different degrees and directions of stretch. The Court held that the patent was invalid as requiring no more than the skill of the calling.

Perhaps the closest question in this case is the effect to be given to the commercial success of plaintiff's garment manufactured under the patent in suit. Crescent and others did copy plaintiff's garment shortly after it came upon the market. Although the prior art was available to them, they did not produce the claimed infringing garments until plaintiff's garment was available.

Wide acceptance of a product indicates the alleged invention was not obvious. Ray-O-Vac Co. v. Goodyear Tire & Rubber Co., Inc., 7 Cir., 136 F.2d 159, 160, aff'd. 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721. The presumption of validity arising from the grant of a patent is strengthened by the additional presumption arising from the fact that the invention entered into immediate use and met with substantial commercial success. Harris et al. v. National Machine Works, Inc., et al., 10 Cir., 171 F.2d 85; England v. Deere & Co., 7 Cir., 284 F.2d 460, 463. This Court stated in Hueter v. Compco Corp., 7 Cir., 179 F.2d 416, at p. 418: "In a close case evidence of the commercial success may tip the scales in determining whether an improvement amounts to an invention."

However, it is just as well established that commercial success without invention will not make patentability. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162; General Foods Corp. v. Triangle Manufacturing Co., 7 Cir., 253 F.2d 227, 230. "Although commercial success may be relevant in a doubtful case of patentability, it may not be used to create a doubt on the question where none would otherwise exist." Application of Jones, Cust. & Pat.App., 298 F.2d 944, 946.

Commercial success will not sustain a patent in view of clear proof of invalidity. Jungersen v. Ostby & Barton Co., et al., 335 U.S. 560, 567, 69 S.Ct. 269, 93 L.Ed. 235.

Defendant argues that any commercial success which plaintiff had was due to plaintiff's commercial garment and that such garment differs from the claims of the patent in suit. Defendant points out that each of the claims of the patent provides the bands must be "connected along substantially all of their edges to said front section." In plaintiff's commercial garment and defendant's accused garments, the stitching on the strip is interrupted briefly where it crosses the other strip. Defendant points to the same absence of stitching to show noninfringement.

The absence of stitching on the band is not of an appreciable amount. This absence of stitching in both plaintiff's and defendant's commercial garments is but a minor departure from the garment shown in the drawing of the patent in suit. It is an inconsequential manufacturing difference without any attendant change of the mode of operation of the commercial garments. If the question were controlling in this case, we would hold that the accused garment did infringe in spite of the brief interruption in the stitching.

The District Court found the prior art pleaded by defendant is more pertinent than any of the prior art cited by the Examiner. We think this is certainly true as to Levy Patent No. 2,458,279 and Imershein Patent Re. 21,595.

The District Court also has found that each of the individual components of the claimed invention was well known in the prior art, and that the patentee has not produced any unusual or surprising consequences from the unification of the old elements or components of the prior art. There is substantial evidence in the record to sustain these findings.

■ Due to anticipation by the prior art, and also the prior public use of the garments known as "Caprice", "Egyptian Queen" and "Little Egypt", and in view of the findings of the District Court, the judgment entered herein in favor of the defendant is

Affirmed.