The **TAYLOR–REED CORPORATION,**
Plaintiff-Appellee,

v.

**MENNEN FOOD PRODUCTS; INC.,** **American Home Products Corporation,** **and Frederick C. Mennen, Defendants-Appellants.**

No. 14143.

United States Court of Appeals
Seventh Circuit.

Oct. 15, 1963.

Rehearing Denied Nov. 8, 1963.

Carlton Hill, Benjamin H. Sherman, Anthony R. Chiara, Chicago, Ill., for defendants-appellants.

Charles A. Bane, Chicago, Ill., Roland Obenchain, South Bend, Ind., for appellee. John C. Blair, F. Eugene Davis IV, Stamford, Conn., of counsel.

Before HASTINGS, Chief Judge, and KNOCH and SWYGERT, Circuit Judges.

HASTINGS, Chief Judge.

This is a suit for infringement of plaintiff's United States Patent No. 2,-673,805, issued on March 30, 1954, on application filed March 2, 1953, to Tip Top Products Company as assignee of Benjamin W. Coleman. The district court held the single claim of this patent to be valid and infringed.

The district court further held that defendants were not guilty of unfair competition and that there had been no willful appropriation of plaintiff's patent giving rise to the recovery of treble damages under 35 U.S.C.A. § 284.

This appeal is solely from that part of the judgment holding validity and infringement of plaintiff's patent. No appeal has been taken from those parts of the judgment favorable to defendants.

The Coleman patent in suit is entitled "Popcorn Package" and "relates to a popcorn package, and more particularly to a compact package in which unpopped corn and a frying fat are stored for cooking therein, said package being expandable under the pressure of the expanding popped corn." Such packages in a variety of forms are sold in food stores,

ready to be placed in their packaged condition on a stove for popping. The popped corn is removed from the container for eating and the package may be discarded.

Plaintiff's product has been sold since July, 1954, under the name of "E-Z Pop" and enjoyed commercial success.

The file history of the application for the Coleman patent discloses that it originally contained six claims. Nine additional claims were subsequently added by amendment. Thus, fifteen claims were considered by the Patent Office. The Examiner, after listing five references, rejected the fifteen claims as lacking invention over the prior art.

By a second amendment, Coleman then canceled the fifteen claims originally presented and substituted therefor the single claim which finally issued as the sole claim in suit.

In rejecting the original fifteen claims the Examiner found, in regard to the references listed, that "Spencer discloses the organization of popcorn in a package which is intended to be heated to pop the corn while remaining in the wrapper as set out in the claims. It is not seen that it involves invention to include a cooking vessel in the package in view of Welch or Marshall each of whom discloses this feature to be old. No patentable significance is attached to the use of aluminum as the packaging material as the 'Food Engineering' publication shows this to be old. Martin as well as Spencer shows that it is old to incorporate the oil or fat with which the corn is to be popped with the corn in the package prior to popping."

Coleman's single claim as finally allowed reads:

"A package of popcorn in which the same is prepared for consumption consisting of a metallic vessel, an expansible, inflatable metallic cover for said vessel conjoined thereto at their peripheral edges, and popcorn and a frying fat contained in said vessel under said cover, said cover being arranged concavely in said vessel over said popcorn and fat, said cover adapted to expandibly inflate upon popping of said popcorn and to form an enlarged expanded enclosure in a convex form with said vessel for said popped corn, and said cover consisting of a quantity of material sufficient to form upon inflation an enclosure with said vessel several times the initial volume contained between said vessel and said cover."

Claim 9 is typical of the fifteen claims rejected by the Examiner and canceled by Coleman. In order to demonstrate what Coleman disclaimed by cancellation and the limitation he inserted in order to secure allowance of the claim in suit, defendants draw a comparison between canceled claim 9 with the claim in suit. We set this out below, the limiting elements in italics:

"Cancelled Claim 9

9. A package for popcorn and for preparing the same for consumption consisting of a metallic vessel, an inflatable metallic cover for said vessel conjoined at their peripheral edges, and popcorn and a frying fat contained in said vessel under said inflatable cover,

said cover being adapted to expand and inflate upon popping of said popcorn and to form an enlarged expanded enclosure with said vessel for said popped corn.

The Claim in Suit

A package of popcorn in which the same is prepared for consumption consisting of a metallic vessel, an *expansible*, inflatable metallic cover for said vessel conjoined *thereto* at their peripheral edges, and popcorn and a frying fat contained in said vessel under said cover,

*said cover being arranged concavely in said vessel over said popcorn and fat,*

said cover adapted to expandibly inflate upon popping of said popcorn and to form an enlarged expanded enclosure *in a convex form* with said vessel for said popped corn,
*and said cover consisting of a quantity of material sufficient to form upon inflation an enclosure with said vessel several times the initial volume contained between said vessel and said cover.*"

In the only embodiment illustrated and described in the patent in suit the vessel is a semi-spherical (cup shaped) bowl preferably of heavy gauge hard rolled aluminum. The cover of the bowl is of extremely light gauge soft annealed aluminum foil concavely arranged to conform with the inside of the bowl and against the corn and fat in the bottom of the bowl. In such compact form, it is stated, "the popcorn package provides a nesting feature so that many can be combined within a relatively small space."

The patent specification describes the corn popping operation substantially as follows: upon application of heat to the bottom of the bowl, the fat will melt and upon reaching a frying temperature, the corn will pop and expand. As the corn pops, it breaks open with a cracking sound and beats against the cover of the bowl. Because the cover is made of light gauge soft annealed metal (aluminum), it will expand from its depressed concave form to a convex shape. The force and expansion of the popped corn simply pushes the bowl cover upwardly until it is substantially filled with popped corn.

There are package specifications to show satisfactory dimensions for the bowl and its cover to form semi-spheres that will provide an excellent package. Although the specification states that the package "may be arranged in forms other than spherical, or semi-spherical," no other form or shape is described or shown. Indeed, the "nesting feature" described as one of the objects of the patent, would require that the cover have the same configuration as the vessel.

It is clear to us that, based on our examination of the file history of the application for the patent in suit, the two salient features of the limiting claim made for its issuance and to distinguish it from the rejected canceled claims and the prior art are (1) the concave form of the bowl cover to conform to the configuration of the vessel so that it would expand from its depressed form into a convex shape, and (2) thereby providing "a nesting feature so that many can be combined within a relatively small space."

■ The district court made a number of findings of fact contrary to the conclusion we have reached. Since we are able to resolve this question on the basis of documentary evidence, the findings of the district court on this issue are deprived of the degree of finality which would otherwise attach under Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. Kiwi Coders Corporation v. Acro Tool & Die Works, 7 Cir., 250 F.2d 562, 568 (1958), and cases cited therein. The documentary rule stated in Kiwi Coders was cited with approval in Nicholson v. Carl W. Mullis Engineering and Mfg. Co., 4 Cir., 315 F.2d 532, 536 (1963). See, Becker v. Webcor, Inc., 7 Cir., 289 F.2d 357, 361 (1961), cert. denied, 368 U.S. 970, 82 S.Ct. 445, 7 L.Ed.2d 398; Armour & Co. v. Wilson & Co., 7 Cir., 274 F.2d 143, 152 (1960). We hold, therefore, that such contrary findings on this proposition must be set aside.

■■ It should be noted that Coleman's cancellation of his original fifteen claims followed their express rejection by the Patent Office. The claim of the patent in suit was necessarily limited to avoid such rejection. Such cancellation is not within the scope of a "voluntary cancellation" which, under certain circumstances, may avoid the doctrine of file wrapper estoppel. "File wrapper estoppel arises only through amendment and cancellation of claims to overcome rejection, and the court will look no further than to learn whether the patentee seeking to disavow an element of his claim was forced to introduce such element to avoid rejection." 69 C.J.S. Patents § 212, p. 725 (1951), cited by plaintiff in support of the converse of this proposition. This we find to be the situation in the case at bar.

The file history further shows that Coleman assigned the pending application to Tip Top Products on February 8, 1954, to whom it was issued as assignee. By subsequent assignments plaintiff became the owner. Three months after the patent issued, Tip Top entered into a limited licensing agreement with plaintiff on July 1, 1954. On

March 30, 1955, Tip Top, as agent of Coleman, filed an application for reissue of the patent on the ground " *  *  * that the claims of the original patent fail to give protection  *  *  * [since the] cover could be flat rather than only concave as recited in the claim  *  *  *."

The proposed claims sought on reissue were rejected by the Patent Office "as including new matter" and "in view of the fact that claims of similar scope or more narrow scope were presented and deliberately cancelled from the original application." Tip Top abandoned the application for reissue on July 20, 1955, following the Patent Office rejection.

■ On plaintiff's objection, the district court refused to admit into evidence an abstract of the file wrapper and contents of the abandoned reissue application. The trial court grounded its rejection on the fact that the reissue application and supporting affidavit were not made by plaintiff and that plaintiff could not be bound by an admission against interest not made by it. We conclude this was clear error.

■ Plaintiff was in privity with the patent title holder. The admissions against interest were made "on behalf of and as agent for the inventor." Plaintiff was a subsequent assignee of the remaining interest in the patent. It took the same rights in the patent as held by its assignor. The trial court stated that it would have been admissible against Tip Top. It necessarily follows that plaintiff cannot claim an infringement its assignors were estopped to claim. Schnitzer v. California Corrugated Culvert Co., 9 Cir., 140 F.2d 275, 276–277 (1944); Kinnear-Weed Corp. v. Humble Oil & Refining Co., E.D.Tex., 150 F.Supp. 143, 160–161 (1956), aff'd 259 F.2d 398, cert. denied, 361 U.S. 903, 80 S.Ct. 210, 4 L. Ed.2d 158.

■ Having determined what, in our view of this case, are the limitations imposed on the claim in suit, we proceed to examine the basis on which the district court found infringement.

It appears to be undisputed that plaintiff never produced and sold commercially a popcorn package similar to the structure illustrated and described as the only embodiment specified in the patent in suit, viz.: a semi-spherical bowl with a cover concave in form to conform to the inside of the vessel and with a nesting feature.

Plaintiff's "E-Z Pop" commercial package is substantially identical to the one shown in its Patent No. 2,673,806, not in suit here since the claims thereof relate to a folded paper handle. This package consisted of a bottom vessel which was a flat shallow aluminum pan, a flat cardboard cover for the vessel which converted into a handle to make the vessel a manipulatable pan and a compactly arranged enclosed inflatable metallic foil subcover formed into a button over the popcorn and fat. Later, the package was changed to employ a wire handle and a different type of cardboard lid.

Defendants' accused package is sold under the trademark "Jiffy Pop." Its package consists of a shallow flat pan made of aluminum foil containing a mixture of unpopped corn and cooking oil. The pan is covered by a flat spirally wound aluminum foil cover which is carried by a flange at the upper edge of the pan. Positioned over this cover and resting on the flange is a relatively rigid flat cardboard cover which is waxed on both sides to prevent moisture transfer during storage. Also resting on the flange at the upper edge of the pan is a circular portion of a wire handle.

In the popping operation of defendants' package, the central portion of the waxed cardboard cover is removed by detachment along the tear track and the package is heated. As the cooking oil in the pan is heated, it produces a gas which builds up within the container and exerts pressure against the spirally wound aluminum cover causing the folds thereof to open and the cover to expand to provide ample room for the popped corn.

Defendants' package and the popping operation respond to defendants' patent No. 2,815,883 covering the spirally wound aluminum cover and the wire handle to their patent No. 2,791,350 covering a pop-

corn package with a wire handle. The numbers of these patents appear on defendants' "Jiffy Pop" package.

The district court found that plaintiff's commercial product embodies the device disclosed in its Coleman patent in suit. Since we have already determined that this commercial package does not respond to the limitations in the sole claim allowed in the Coleman patent, it necessarily follows that such finding is clearly erroneous.

So, in this case, where plaintiff seeks to broaden its claim by dropping the limiting elements the patentee introduced in order to overcome the rejection of prior claims as invalid under the cited prior art, such amended claim must be strictly construed against the inventor and it may not be given the larger scope claimed prior to amendment by construction or resort to the doctrine of equivalents. I. T. S. Rubber Co. v. Essex Co., 272 U.S. 429, 47 S.Ct. 136, 71 L.Ed. 335 (1926); Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 221, 61 S.Ct. 235, 85 L.Ed. 132 (1940); Exhibit Supply Co. v. Ace Corp., 315 U.S. 126, 136–137, 62 S.Ct. 513, 86 L.Ed. 836 (1942).

In I. T. S., the Supreme Court summarized this rule in the following appropriate language:

"It is well settled that where an applicant for a patent to cover a new combination is compelled by the rejection of his application by the Patent Office to narrow his claim by the introduction of a new element, he cannot after the issue of the patent broaden his claim by dropping the element which he was compelled to include in order to secure his patent. Shepard v. Carrigan, 116 U.S. 593, 597 [6 S.Ct. 493, 29 L.Ed. 723]. If dissatisfied with the rejection he should pursue his remedy by appeal; and where, in order to get his patent, he accepts one with a narrower claim, he is bound by it. Shepard v. Carrigan, supra, [116 U.S.] 597 [6 S.Ct. 495, 29 L.Ed. 723]; Hubbell v. United States, 179 U.S. 77, 83 [21 S.Ct. 24, 45 L.Ed. 95]. Whether the ex-

aminer was right or wrong in rejecting the original claim, the court is not to inquire. Hubbell v. United States, supra, [179 U.S.] 83 [21 S. Ct. 26, 45 L.Ed. 95]. The applicant having limited his claim by amendment and accepted a patent, brings himself within the rules that if the claim to a combination be restricted to specified elements, all must be regarded as material, and that limitations imposed by the inventor, especially such as were introduced into an application after it had been persistently rejected, must be strictly construed against the inventor and looked upon as disclaimers. Sargent v. Hall Safe & Lock Co., 114 U.S. 63, 86 [5 S.Ct. 1021, 29 L.Ed. 67].; Shepard v. Carrigan, supra, [116 U.S.] 598 [6 S.Ct. 495, 29 L.Ed. 723]; Hubbell v. United States, supra, [179 U.S.] 85 [21 S.Ct. 27, 45 L.Ed. 95]. The patentee is thereafter estopped to claim the benefit of his rejected claim or such a construction of his amended claim as would be equivalent thereto. Morgan Envelope Co. v. Albany Paper Co., 152 U.S. 425, 529 [14 S.Ct. 627, 38 L.Ed. 500]. So where an applicant whose claim is rejected on reference to a prior patent, without objection or appeal, voluntarily restricts himself by an amendment of his claim to a specific structure, having thus narrowed his claim in order to obtain a patent, he 'may not by construction, or by resort to the doctrine of equivalents, give to the claim the larger scope which it might have had without the amendments which amount to a disclaimer.' Weber Elec. Co. v. [E. H.] Freeman Elec. Co., 256 U.S. 668, 677 [40 S.Ct. 483, 64 L.Ed. 1023];" Id. [272 U.S.] at 443–444, 47 S.Ct. at 141, 71 L.Ed. 335.

The district court then erroneously found and concluded that defendants' expandible cover is the equivalent of the Coleman expandible cover and that defendants' "Jiffy Pop" popcorn packages infringe the Coleman patent in suit. Un-

der the posture of this case as we now find it, this was error.

■ The measure of plaintiff's monopoly must be determined by the claim of the patent in suit. Neither plaintiff's commercial package nor defendants' commercial package respond to the Coleman patent claim. A charge of infringement under these circumstances cannot be based on similarity to plaintiff's commercial structure. "The claims of plaintiff's patent, not his invention, or what is now claimed to be his invention, govern." Universal Oil Products Co. v. Globe Oil & Refining Co., 7 Cir., 137 F.2d 3, 6 (1943), aff'd 322 U.S. 471, 64 S.Ct. 1110, 88 L.Ed. 1399 (1944). See, Aro Mfg. Co. v. Convertible Top Co., 365 U.S. 336, 339, 81 S.Ct. 599, 5 L.Ed. 592 (1961).

In two recent cases we have been compelled to reverse findings of infringement by the district court on grounds similar to those controlling the case at bar.

In North Star Ice Equipment Co. v. Akshun Manufacturing Co., 7 Cir., 301 F.2d 882 (1962), cert. denied, 371 U.S. 889, 83 S.Ct. 185, 9 L.Ed.2d 122, we affirmed the validity of the patent in suit and reversed a finding of infringement. In North Star, as in the instant case, the evidence on the question of infringement was almost entirely documentary or in the form of physical exhibits. Applicable here is Judge Duffy's language there:

> "Had Claim 13 been allowed, it might well have covered the one part accused North Star blade, but since it was rejected and cancelled by the applicant, the assignee of applicant is estopped to broaden by interpretation, the claims of its patent to embrace that which was given up in the Patent Office.
>
> "Pertinent also is the statement in Weber Electric Co. v. E. H. Freeman Electric Co., 256 U.S. 668, at pages 677–678, 41 S.Ct. 600, 603, 65 L.Ed. 1162, 'Having thus narrowed his claim against rotary movement in order to obtain a patent, the patentee may not by construction, or by resort to the doctrine of equivalents, give to

the claim the larger scope which it might have had without the amendments, which amount to a disclaimer of rotation as an operative feature of his device.'" Id. 301 F.2d at 886.

Of similar import are Judge Swygert's words in Jacwil Mfrs. v. Batesville Casket Company, 7 Cir., 311 F.2d 38 (1962):

> "For reasons to be discussed, we hold that the scope of the claims of the two Hillenbrand patents is limited by their prosecution history and hence finding of fact 19 is clearly erroneous. Thus limited the patent claims cannot be expanded by the doctrine of equivalents so as to embrace those particulars excluded by the prosecutional history of the patent. Lewis v. Avco Manufacturing Corp., 228 F.2d 919 (7th Cir., 1956). Of necessity, finding of fact 20, flowing from an erroneous application of the doctrine of equivalents, must also fail as being clearly erroneous." Id. 311 F.2d at 40–41.

\* \* \* \* \* \*

> "We realize that each case must stand on its own facts. Particularly is this true where file wrapper estoppel is raised as a defense to an infringement action. The line between what is patentable and what has been properly disallowed must be recognized when applying the doctrine of equivalents. In this regard it is well to recall what was said by Judge Major in Lewis v. Avco Mfg. Corp., 228 F.2d 919, 925 (7th Cir., 1956):
>
> > 'If the difference between tweedledum and tweedledee represented the margin between the prior art and the patent as allowed, the patentee would not be heard to assert that such difference was of no consequence on the issue of infringement.'"
> Id.. 311 F.2d at 43.

For the foregoing reasons, the district court erred in holding that defendants infringed plaintiff's patent.

We shall not disturb the district court's holding that plaintiff's patent is valid.

Accordingly, the judgment of the district court that plaintiff's patent is infringed is reversed and in all other respects the judgment appealed from is affirmed.

Reversed in part. Affirmed in part.