**WELSH CO., Plaintiff-Appellee,**

v.

**Victor A. CHERNIVSKY, d/b/a Comfy Babe Company, Defendants-Appellants.**

**No. 14509.**

United States Court of Appeals
Seventh Circuit.

Jan. 21, 1965.

Rehearing Denied March 30, 1965.

Swygert, Circuit Judge, dissented.

Bradford Wiles, William R. McNair, Chicago, Ill., for defendants-appellants.

Lawrence H. Cohn, St. Louis, Mo., Edwin S. Booth, Chicago, Ill., for appellee.

Before DUFFY, KILEY, and SWYGERT, Circuit Judges.

KILEY, Circuit Judge.

Welsh Company sued for a declaration that defendant's patent, No. 2,848,040, was invalid and not infringed by a baby chair manufactured by Welsh. Chernivsky counterclaimed, charging infringement. The district court found the patent valid but not infringed, entered judgment accordingly, and this appeal followed. We think the court's judgment is right as to validity and erroneous as to infringement.

The patented article in suit is an infant seating device consisting of a base member and a back rest member formed of spring wire. These parts are so adapted that they may be disconnected for storing and shipping. The union of the two parts is by means of sleeves on the ends of the back rest member into which the extremities of the base member are inserted. Comprising the third component of the structure is the seat, which consists of a fabric bag or envelope which slips over the back rest member. When so installed there is a fullness at the bottom of the fabric forming a pocket-like dip which receives the baby's buttocks. A cloth belt, loosely attached to each side of the back frame, is fastened to the fabric, at the front, to prevent the infant from falling out, and at the center of the belt extending downward to the bottom of the fabric is attached another cloth belt to separate the legs of the infant. The back frame is U-shaped, with the arc at the top having the function of pulling the fabric into a safe resting place at the center for the baby's head.

Chernivsky, while claiming that his and the Welsh chairs are equal for all practical purposes, admits that because the words of his claim 1 do not read upon the Welsh chair, a showing of infringement requires application of the doctrine of equivalents.

The decision below was that Chernivsky's patent monopoly was restricted to a narrow improvement over the prior art and that every feature of the accused device of Welsh "embodies elements all known in the prior art," but does not include the frictional locking feature "so vital" to the patent in suit. The court refused to apply the doctrine of equivalents in favor of Chernivsky and against the Welsh device, on the ground that Chernivsky had narrowed his claims to the locking feature in order to meet the examiner's objections and thus, under the doctrine of file wrapper estoppel, is precluded from expanding his claims by the doctrine of equivalents to cover the elements surrendered by amendment.

We shall examine the facts with respect to infringement before considering the effect of file wrapper estoppel on Chernivsky's claim to equivalence. Chernivsky argues that Welsh duplicated, with "trivial changes," the "desirable features" of his patent to avoid the language of claim 1, but that there is infringement since both devices "do the same work in substantially the same way, and accomplish substantially the same result * * *." Sanitary Refrigerator Co. v.

Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147 (1929). On oral argument before this court counsel for Welsh admitted that Welsh knew of the Chernivsky patent and attempted to design around it.

The rear cross-bar of the Welsh base is slightly lower than and exceeds slightly in width the base of Chernivsky's; the sides of both bases are slightly off parallel from back to front, the Welsh slightly outward and the Chernivsky slightly inward; the sides of the Welsh base are a little longer than those of the Chernivsky base; the bends at the ends of the sides on the Welsh base are shorter than those on the Chernivsky base and turn forward, while Chernivsky's flare outwardly without the forward turn; the Welsh sides turn upward at a slightly wider angle than Chernivsky's so that the sides of the Welsh back frame are in a more upright line than Chernivsky's, resulting in a less backwardly inclined whole.

The sides of the base frames, in both chairs, must be sprung inwardly in order to fit the extremities of the base into the sleeve extremities of the back frame. The base extremities of the Welsh device are from a front view substantially perpendicular to the plane of the base, while the extremities of the Chernivsky base angle inwardly. The tips of the extremities of the Chernivsky base then flare outwardly. The result of this outward turn at the tips of the Chernivsky base extremities is a tighter spring fit between the base and back frames. This is the "frictional locking" device referred to by the district court.

The bases of both devices are designed to give stability. The Chernivsky device accomplishes this through the rear cross-bar and the comparatively extensive outward flaring of the front ends of the base to compensate for the comparatively narrower chair. The Welsh device compensates for lack of outward flaring front ends by having its cross-bar at the rear of the base wider and the sides extending outward toward the front so that they are several inches longer than the Chernivsky sides before turning inward, and at the

point where they begin to turn the base of the Welsh device is about four inches wider than the Chernivsky base. The resting points of contact are slightly different, but in sum are about equal. The Chernivsky connection between the base and back frame is tighter and holds together—at least when not occupied—better than the Welsh device.

As we have stated, the back frames of both chairs are slightly outward from parallel as they reach toward their extremities, and the backward incline of the Chernivsky device is greater, occupied or not. The top of the back frame in the Chernivsky device is a broad curve resulting, when the chair is occupied, in a depression in the center of the fabric to accommodate the baby's head and maintain it in a safe center place. The top of the back of the Welsh device is not curved, but it is a cross piece which extends backwardly from each side to form a shallow V. When the chair is occupied this has the same result as the Chernivsky back frame.

We conclude that the Welsh device does accomplish the same result as the patented device by substantially the same means and that it is the equivalent thereof. Independent Pneumatic Tool Co. v. Chicago Pneumatic Tool Co., 194 F.2d 945 (7th Cir.1952).

The question now is whether there is any room in the present case for application of the doctrine of equivalents, in view of the file wrapper estoppel doctrine. Because the district court's findings on the issue of file wrapper estoppel were based solely on documentary evidence, all of which is before us, those findings have not the same degree of finality which ordinarily attaches to findings of fact under Rule 52(a) of the Federal Rules of Civil Procedure. Taylor-Reed Corp. v. Mennen Food Products Co., 324 F.2d 108, 111 (7th Cir.1963). We hold that the district court's finding that Chernivsky narrowed his claim to the so-called "frictional locking device" is clearly erroneous and this finding was in part induced by an erroneous application of the law. It must therefore be set aside.

Chernivsky originally filed ten claims, the first two of which, as amended, are set out in the margin.[1] Because of rejections by the examiner on the basis of cited prior art, Chernivsky twice amended, and finally cancelled, these claims and substituted for them new claims 1, 2 and 3. After a conference with the examiner the patent issued on the claims. No claim of infringement is made with respect to claim 2, and claim 3 depends upon claim 1, which is set out in the margin.[2]

It can be seen that patent claim 1 is essentially an amendment of original claim 2, and that as granted claim 1 is broader, rather than narrower, than original claim 2. Original claim 2 described the extremities of the ends of the base as "flaring slightly outward out of line with the hollow extremities of the back rest," while patent claim 1 describes these extremities only as "inclined slightly out of line with the said hollow extremities." The meaning of the term "extremities of the ends" here becomes important. This term is used twice in patent claim 1, preceded the second time by the word "said." A normal reading of the claim, therefore, would attribute the same meaning to the term in both instances. The first use of the term occurs in the following phrase:

" * * * having front ends with angular return bends extending outwardly and downwardly to form two front legs and the extremities of the ends extending upwardly and tilted backwardly * * * "

Reading the description against the Chernivsky chair makes it clear that the term in question refers to the entire segment of the base to which the back is attached. It must, then, have that same meaning in the second reference, and the phrase does not, as Welsh would have us read it, refer only to the outwardly bent tips of those segments. Patent claim 2 [3] also contains the term "said extremities of the ends of the base," but there it is conjoined with "flare slightly outward" and does refer to the tips of the segments in question. The term "extremities of the ends" was used ambiguously, but we have resolved the ambiguity in what appears to us to be the most reasonable manner and one which is consistent with the presumption of the validity of the patent. If the term in

1. 1. In a resilient baby support, a margin frame spring wire base having parallel sides connected at the rear by an offset crosspiece forming a rear contact portion and having front ends with angular return bends extending outwardly and downwardly to form two front legs and the extremities of the ends extending upwardly and tilted backwardly, and a separate back rest spring wire margin frame having two parallel sides connected by a rounded portion at corresponding ends and the other ends having hollow extremities into which the said extremities of the ends of the base fit tightly but removably to hold the back rest over the base at an upward inclination rearwardly from the front of the base.

2. In a baby support in accordance with claim 1, the said extremities of the ends of the base flaring slightly outward out of line with the hollow extremities of the back rest providing greater stability so the extremities of the base must be sprung inwardly to engage them with the said hollow extremities thus increasing frictional engagement.

2. 1. In a resilient baby support, a marginal frame, a spring wire base having substantially parallel sides connected at the rear by an offset cross piece forming a rear contact portion and having front ends with angular return bends extending outwardly and downwardly to form two front legs and the extremities of the ends extending upwardly and tilted backwardly, a separate back rest spring wire marginal frame having two parallel sides connected by a rounded portion at corresponding ends and the other ends having hollow extremities, the said extremities of the ends of the base inclined slightly out of line with the said hollow extremities of the back rest so the extremities of the base must be sprung to engage in the hollow extremities and fitting tightly but removably therein to hold a back rest over the base at an upward inclination rearwardly from the front of the base.

3. 2. A baby support in accordance with claim 1, in which the said extremities of the ends of the base flare slightly outward out of line with the hollow extremities of the back rest providing greater stability of the wire base when set up in supporting position.

claim 1 meant only the bent tips, then claim 2 would be practically redundant and superfluous.

In "remarks" filed with the substituted claims Chernivsky's attorney stated that "the applicant is not attempting to claim broadly any arm or other member which may be sprung into engagement with another. * * *" Both Welsh and the district court took this statement as indicating that Chernivsky was limiting his claim solely to the "frictional locking" device. The context of the patent and file wrapper shows, however, that the claim was not actually narrowed and that the statement in question was meant to indicate only that the springing action was claimed as part of the combination of parts which make up the Chernivsky patent.

The district court's findings and conclusion on the issue of file wrapper estoppel were closely related to, and dependent upon, its findings as to the prior art. The court stated that

"[I]n view of the narrow construction defendant necessarily placed on his claims in the Patent Office to distinguish them from the prior art, his claims do not cover the alleged infringing device which in each and every feature thereof embodies elements all known in the prior art."

In support of this conclusion the court cited the case of Standard Mirror Co. v. H. W. Brown, Inc., 113 F.2d 379 (7th Cir. 1940), where it was held that where a patent "depends for its novelty over the prior art upon a single limited feature of construction, the claims cannot be expanded by any doctrine of equivalents to cover a device which lacks that single essential feature." The Standard Mirror case, however, and the cases which follow it, Jacwil Mfrs. v. Batesville Casket Co., 311 F.2d 38 (7th Cir.1962), cert. denied 372 U.S. 942, 83 S.Ct. 937, 9 L.Ed. 2d 968 (1963); Fife Mfg. Co. v. Stanford Engineering Co., 299 F.2d 223 (7th Cir. 1962); Lewis v. Avco Mfg. Corp., 228 F. 2d 919 (7th Cir.1956); have in common a fact which distinguishes them from the case at hand. In those cases the patented

device contained only a single, limited improvement over a preexisting device in the prior art, and a broader construction of the claims than that allowed by the court would have rendered the patent invalid on the prior art. In the case before us, on the other hand, there was no single device in the prior art which embodied, except for the coupling device, all of the elements of the Chernivsky device.

■■ We think the root of the district court's error was in considering Chernivsky's claim 1, upon which his claims 2 and 3 rest, against the prior art piece by piece instead of considering the device totally, without properly applying the well-established principle that a combination of old elements in a manner that is unobvious to one skilled in the trade and which produces a new and useful result may be patented. Expanded Metal Co. v. Bradford, 214 U.S. 366, 381, 29 S. Ct. 652, 53 L.Ed. 1034 (1909); Loom Co. v. Higgins, 105 U.S. (15 Otto) 580, 591, 26 L.Ed. 1177 (1881); Kaakinen v. Peelers Co., 301 F.2d 170 (9th Cir.), cert. denied 371 U.S. 823, 83 S.Ct. 40, 9 L.Ed. 2d 62 (1962); Anderson Co. v. Sears, Roebuck and Co., 265 F.2d 755 (7th Cir. 1959); Brown v. Brock, 240 F.2d 723 (4th Cir.1957); Weller Mfg. Co. v. Wen Products, Inc., 231 F.2d 795 (7th Cir. 1956); Blaw-Knox Co. v. I. D. Lain Co., 230 F.2d 373 (7th Cir.1956). Since a combination of old elements alone may be enough to constitute a patentable device, the addition of a new element to the combination should not, as the district court seemed to conclude, result in a limitation of the claims to the new element.

Considering the prior art discussed by the district court, we think the Pribil patent did not read on Chernivsky's, considered as a whole, since, among other things, in the Pribil device the infant lies down; the Blackledge patent's back rest does not accommodate small infants; Brown resembles Chernivsky's patent more closely, but has not the latter's detachable light base and back frames nor the resiliency; and Oullette has not the light detachable base and back frames nor the resiliency.

Each of the patents contains one or more elements which are substantially similar to Chernivsky's. But there was no combination of parts into any whole which is substantially similar to the patent in suit. Presumably Chernivsky, observing the prior art, drew ideas from the various devices and conceived the idea of a novel, useful and unobvious baby support which met a social need. This synthesis of ideas into a composite creation does not permit a competitor to separate this composite into the old elements that went into it and by slight modifications of each element avoid infringement by omitting the novel element from its imitating device.

 We agree with the district court's conclusion that the commercial success achieved by Chernivsky's baby support with only modest promotion and the fact that still another competitor copied it in virtually every detail, while not sufficient of itself to establish the validity of the patent, Jungersen v. Ostby & Barton Co., 335 U.S. 560, 567, 69 S.Ct. 269, 93 L.Ed. 235 (1949), does support the inference that the device was unobvious and filled a need. Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721 (1944); H. W. Gossard Co. v. J. C. Penney Co., 304 F.2d 515 (7th Cir.1962). Our difference with the district court is, of course, only over the scope of the patent. We think the inference is justified that such commercial success was not achieved solely because of the novel locking device, but because of the combination of all of the elements which comprised this new and useful whole.

For the reasons given, the judgment of the district court as to infringement is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

SWYGERT, Circuit Judge (dissenting).

Reluctantly, I must disagree with Judge Kiley's opinion. I think that the district court properly applied the doctrine of file wrapper estoppel in denying infringement.

The district judge made extensive findings about the prior art and also about the history of the prosecution of the Chernivsky patent.[1] In addition to these

---

[1]. Findings pertinent to these matters include the following:

Infant seating devices of the type involved in this action are disclosed in Pribil patent No. 2,460,308 granted February 1, 1949, and in the Blackledge patent No. 704,774 granted July 15, 1902.

The Pribil patent discloses a baby support having a resilient frame structure which provides a flexible support. It is similar in construction and function to the baby seat of the Chernivsky patent in suit. It differs therefrom in that the backrest and base parts are not detachable, one from the other.

The Blackledge patent discloses a resilient baby support having a backrest which is detachably connected to a base member; it does not employ plug and tubular socket means for detachably connecting the frame members together.

The prior patent art contains examples of seating devices constituted by separable parts having their end portions connected together by plug and tubular socket means. The Examiner rejected original claims 1 through 10 on the grounds that no invention is involved in providing a backrest having hollow extremities in which fit the ends of a separable base in view of Brown v. Barker, Fig. 5. Plaintiff acceded to this contention by cancelling those claims.

The concept of a sleeve connection between mating extremities of members of a supporting device, wherein the members have to be sprung together before effecting an interfitting relationship is old in the art, as shown in the Watrous patent.

The connecting means between the base and backrest frames of the Chernivsky patent are characterized by an outward bend or flaring of the extremities of the base frame so that they are not in straight alignment with the tubular socket ends of the backrest frame when their extremities initially spring together. Consequently the said end portions do not slip freely and easily into interfitting relationship when merely sprung together. On the contrary the mating end portions, disposed at an angle one to the other, must be additionally stressed to bring them into straight alignment, before they can be fitted together.

findings, the file wrapper indicates that the patentee's first ten claims were rejected because they were anticipated by the Ouellette patent No. 2,324,421 granted July 13, 1943, the Barker patent No. 2,567,418 granted September 11, 1951, and the Brown patent No. 619,027 granted March 2, 1959 (Great Britain). Twice Chernivsky attempted to have these claims allowed after amendment and twice the examiner rejected the amended claims because of the prior art. Finally, Chernivsky withdrew the original claims and substituted new claims that eventually became patent claims 1, 2, and 3.

In filing the new claims Chernivsky wrote the patent office in pertinent part:

"This application has been amended as a result of a conference courteously granted by the Assistant and Chief Examiners in charge of the application at which it was pointed out that the present invention differs entirely from the references of record in providing a wire base and a rear back portion in which the extremities of the ends of the base are sprung out of line with the ends of the back which are adapted to be engaged thereby, the corresponding ends of the back being provided with sleeves projecting beyond the ends into which the bent ends of the base may be sprung, thereby engaging and holding connection with the back more firmly, providing greater frictional engagement and fitting tightly together but allowing them to be slipped into and out of engagement with each other when desired."

Thus, Chernivsky narrowed his claims to a frictional locking feature. That this feature was the inventive distinction of his structure is also indicated by the claims themselves. All three are identical except for a different description in the wording of the frictional locking feature.

During the course of his decision, the district judge said:

"The file wrapper history plainly reveals that defendant gave a limited construction to his claims in order to obtain his patent.

"An examination of the file wrapper leaves no doubt that this patent was allowed only after defendant gave a very narrow scope to its claims. It is apparent from the successive rejections that without the frictional locking feature involving the flared stubs of the base member there was no invention.

"There is but one inference which can be reasonably drawn from the events preceding the issuance of the

---

The applicant described this special characteristic in distinguishing from the prior art saying: "However, in the present invention, the applicant is covering an entirely different invention, namely, a provision of base and backrest parts having extremities which are secured together but in which the respective ends are neither parallel nor do they extend in the same direction, but the ends of one part must be sprung in order to engage with a hollow sleeve or with the ends of the other part to which they are connected. This construction is planned and deliberate since it results in an increased frictional contact between the parts and once the ends are sprung to engage with the other corresponding ends, it is difficult to disengage them without a reversal of the springing and sliding operation in connecting them."

In a later amendment defendant Chernivsky reiterated the distinguishing characteristic aforesaid and expressly disclaimed a construction wherein the parts may be simply sprung together and slid into interfitting relationship, as disclosed in the prior art Watrous patent, * * * and in the Barker patent, Fig. 5. The applicant Chernivsky expressly disclaimed such old and well-known sleeve connections stating: "The applicant is not attempting to claim broadly any arm or other member which may be sprung into engagement with another. * * *"

The plaintiff's device * * * is so constructed that when the extremities of the backrest and base members are brought into mutual registration the end portions are substantially in straight alignment so that they slip easily together, and without requiring an additional force to align the end portions. In this respect plaintiff's device accords with the disclosure of the prior art Watrous patent.

patent in suit and it is that defendant was but a slight improver in a crowded field where many others had sown. It is evident that broader interpretation of his claims would render them invalid on the prior art.

"The Court is convinced that the patent is not infringed by the plaintiff's device. This conclusion is based upon the doctrine that a patentee who is only a narrow improver, as is the case with the instant patent, has a monopoly restricted to that narrow impovement.

"Having narrowed the scope of his claims in order to obtain the patent, he [defendant] made his precise form a material element of his invention and cannot expand the scope of his claims by construction or resort to the doctrine of equivalents. * * *

"Plaintiff's baby support does not embody the frictional locking feature so vital to defendant's patent. It follows that "where a patent depends for its novelty over the prior art upon a single limited feature of construction, the claims cannot be expanded by any doctrine of equivalents to cover a device which lacks that single essential feature." (Standard Mirror Co. v. H. W. Brown, Inc., 113 F. 2d 379 (7th Cir. 1940)).

In discussing what it considers to be "the root of the district court's error," the majority says that the district judge failed to apply "the well-established principle that a combination of old elements in a manner that is unobvious to one skilled in the trade and which produces a new and useful result may be patented." I do not disagree with this principle as enunciated. I think, however, that its application here is improper. Although a novel combination of old elements "may" constitute invention, the Chernivsky patent was neither claimed nor granted on that basis. Thus, whether or not Chernivsky *could* have been granted a patent on that basis is irrelevant. The inventive-level characteristic of his structure resided solely in the frictional locking feature. The patent was granted only after the applicant had thus limited his claims. To construe the patent as this court now does is, in effect, to give Chernivsky a new patent—broader than the one which was granted to him.

I would adopt the reasoning of the district court and affirm the judgment.