NORTH STAR ICE EQUIPMENT COMPANY, Plaintiff-Appellant,

v.

AKSHUN MANUFACTURING COMPANY, a corporation, and Kent Industries, Inc., a corporation, Defendant-Appellees.

No. 13443.

United States Court of Appeals
Seventh Circuit.

March 20, 1962.

Rehearing Denied May 24, 1962.

James C. Wood, Lloyd W. Mason, Hofgren, Brady, Wegner, Allen & Stellman, Chicago, Ill., for plaintiff-appellant.

J. Warren McCaffrey, Chicago, Ill., for appellees.

Before DUFFY and CASTLE, Circuit Judges, and MERCER, District Judge.

DUFFY, Circuit Judge.

This suit is a declaratory judgment action asking the Court to declare United States Patent No. 2,659,212 invalid and not infringed by North Star's ice-removal tool, method of removing ice and ice-machine combination, and that Patent No. 2,683,357 is invalid and not infringed by North Star's ice-machine overflow trough. These patents are owned by defendant Akshun Manufacturing Company (Akshun). Kent Industries, Inc. (Kent) manufactured and sold ice machines and was a licensee under the two Akshun patents mentioned.

On September 8, 1950, Gerald Lees filed a patent application in the United States Patent Office which he assigned to Akshun. The patent issued on November 17, 1953 as Patent No. 2,659,212, and is the principal patent in suit.

The District Court held Patent No. 2,683,357 invalid, but if valid, not infringed. It held Patent No. 2,659,212 valid and infringed. Plaintiff's prayer for an injunction against alleged unfair trade practices was denied. The judgment order was silent as to Patent No. 2,683,357. The judgment permanently enjoined plaintiff from infringing Patent No. 2,659,212.

North Star Ice Equipment Company (North Star) was incorporated in 1950 in the State of Washington, and had its principal office and manufacturing facilities in the City of Seattle. North Star made and sold ice-making machines which produced flaked ice used in cooling fish and poultry. The North Star machine utilized a cylindrical drum which opened downwardly into an ice storage space or room. The drum is refrigerated so that water poured down over its inner surface freezes on that surface into a sheet of ice. Slowly revolving blades or knives remove the ice from the cylinder in coin-sized flakes which fall into the ice storage room. It is the knives or blades in this machine that are the basis of the controversy in this suit.

Prior to 1950, Treuer, the President of North Star, and Lyle Branchflower were in the business of extracting vitamin-bearing oils from the livers of fish. The fish livers were obtained from the fishing fleet based in Puget Sound, and flaked ice was used in large quantities by the fishing boats to preserve the fish on the journey back to port. In 1945, North Star installed an ice-making plant which serviced the fishing fleet, but insufficient flaked ice was produced to fulfil the demand.

Gerald Lees had been working in refrigeration and building ice-making ma-

chines since 1944. In 1949, Branchflower entered into a written agreement with Lees whereby the latter was to design and supervise the construction of a ten-ton ice-maker. Lees was to receive $1,000 for his services. Such machine was constructed during the summer of 1949 but was not successful. Ice clogged between adjacent ice-removal knives. Only a part of the ice sheet on the drum was removed. The machine was torn down and abandoned. However, Lees received $1,000 pursuant to the agreement.

Treuer, Branchflower and their associates then built an ice machine of their own design. Plaintiff claims this machine utilized unique ice-removal knives. The machine, completed in 1950, proved successful. Several similar machines were built in the latter part of 1950 and were in successful operation at the time the trial herein was held.

During 1950, James Albright, later President of Akshun, attempted to make some arrangement with Branchflower and Treuer for the use of their ice machine, but the negotiations were dropped. In the summer of 1950, Albright arranged for Lees to come to Chicago for the purpose of setting up ice-manufacturing facilities. Albright arranged for Lees to file a patent application on two-part ice-removal blades similar to those used in the machine which he had designed in 1949. Lees left Akshun in the latter part of 1951. Litigation arose between Lees and Akshun over the ownership of the patent applications which had been filed by Lees. The matter was before this Court in Lees v. Akshun Manufacturing Company et al., 7 Cir., 205 F.2d 577.

On February 14, 1957, Akshun filed suit in the Western District of Wisconsin against Tillman Produce Company charging infringement of Patent No. 2,659,212 and Patent No. 2,683,357 because of Tillman's use of an ice-making machine manufactured by North Star. This case was dismissed on September 28, 1959, upon a stipulation of the parties.

The application for Patent No. 2,659,212 named Gerald L. Lees as inventor. The application disclosed and claimed a particular knife for removing a thin sheet of ice in flakes from the freezing surface on the inside of an upright drum-type ice-making machine. The knives are carried on an arm revolving slowly around the freezing surface. Each knife has a horizontal leading portion with an edge adapted to score and form a groove in the ice. A plurality of knives, one above the other, is present to score the ice into a plurality of parallel-spaced grooves. Each knife also has a trailing portion riding in the groove previously formed by the leading portion. The trailing portion is tilted downwardly at an angle to the direction of movement to force the scored ice downwardly, breaking the bond between the ice and the freezing surface, and thus completing the ice-removal process.

The file wrapper of the Lees Patent No. 2,659,212 shows the application as first filed contained eleven claims. Claims 1, 2 and 3 claimed ice-removal knives, describing the leading portion with its scoring or groove-forming function, and the trailing portion with its angle to direction of movement to force the ice downward.

On July 19, 1951, Lees added Claim 13. This claim was broader than the original claims in that it omitted the leading part of the blade and its scoring or groove-forming function. On December 17, 1951, the Patent Office rejected all then pending claims as unpatentable over prior art patent, Taylor 2,063,770. The applicant replaced all prior claims with eight replacement claims; 14 and 15 claimed the two-part knife; 16 and 17 claimed the two-part method of removing ice. The applicant emphasized that the gist of the claimed invention was a knife having two distinct parts and functions, in which the leading part scores the ice to form a groove after which the trailing part rides in the groove and forces the ice downwardly.

On February 11, 1953, new Claims 14, 15, 16 and 17 were rejected as unpatent-

able over the Taylor patent disclosure, and combination Claims 18, 19, 20 and 21 were allowed.

On May 13, 1953, Claims 14 and 15 were amended to define the "substantially straight scoring edge" as "of substantial extent," and to describe the tilted shearing edge as "positioned at its forward part to ride in the groove" left by the scoring edge. Method Claims 16 and 17 were amended to limit their scoring function to forming grooves "throughout the extent of the freezing surface."

Patent No. 2,659,212 issued on November 17, 1953 with Claims 14 through 21 as amended becoming Claims 1 through 8 of the patent. All claims in the patent have as a limitation a knife having the two distinct parts serving their separate functions.

■ We think the District Court was correct in holding that Holden Reissue Patent No. 13,000 did not anticipate. In Holden, vertical cutters chip ice off the inside wall and the chipped ice floats to the top. In Lees' patent in suit, substantially horizontal knives score and wedge ice off the inside wall of the drum and the dry flaked ice falls down and out of the drum.

■ The Patent Office issued the patent in suit after a full consideration of the other prior art patents principally relied on by plaintiff. A presumption of validity attaches to the grant of a patent. We think the claimed invention was something beyond what was obvious to persons skilled in the art to which it relates. We sustain the findings and conclusions of the trial court that Claims 1 through 8 of the Lees Patent No. 2,659,-212 are valid.

The evidence on the question of infringement is almost entirely documentary or in the form of physical exhibits. We have before us plaintiff's Exhibit 21, a physical exhibit which illustrates the North Star ice-removal knives or tools. There is no leading portion to form or indent a groove in the ice sheet preparatory to and preceding the engagement of the inclined surface with the ice sheet.

Instead, there is a simple flat surface sweeping the ice downwardly. Since all portions of the ice-attacking inclined plane extend into the sheet of ice for substantially 95% of the ice thickness, the tool has no portion performing the groove-forming function of the claims of the Lees patent in suit.

Claim 1 of the patent in suit is typical of Claims 1, 2 and 5 through 8 in its definition of the two parts of the knife of the patent in suit. The pertinent parts of Claim 1 are:

"A knife to remove ice * * *

First part
{ 'having a substantially straight scoring edge of substantial extent adapted to indent the ice to form a groove as it travels thereover,'

Second part
{ 'and a shearing edge tilted in relation to the scoring edge and positioned at its forward part to ride in the groove to apply pressure transverse to the direction of indentation to shear the bond between the ice and the surface to which it is frozen.' "

Claim 3 is typical of Claims 3 and 4 of the patent in suit. Claim 3 states:

"The method of removing ice * * *

First part
{ 'compromising the steps of scoring the ice along its exposed surface in a continuous straight line motion throughout the extent of the freezing surface'

Second part
{ 'and then forcing the ice in direction transverse to the direction of score to shear the bond between the ice and the surface to which it is frozen.' "

It is the "first part" recited in each part of the claims of the patent in suit

that is completely missing from the North Star tools.

■ The accused knives lack an essential element of each of the Lees patent claims. While the accused device and the patented blade both remove ice from a drum, beyond this point the similarity ceases. The mere fact that the same end result is accomplished, is not sufficient to be the basis of a finding of infringement. There is no real identity in the structure and they do not function the same. As we stated in Independent Pneumatic Tool Co. v. Chicago Pneumatic Tool Co., 7 Cir., 194 F.2d 945, 947, mere application of claim phraseology is not alone sufficient to establish infringement, nor is the similarity of result. We stated there must be real identity of means, operation and result.

The function of removing ice with a cutter or blade was old before the patent in suit. What was patented is the particular means described for performing the ice-removing function. There cannot be infringement without substantial identity. In the instant case, the North Star tool completely lacks both the element of the leading, scoring, groove-forming edge and also its groove-forming function. Under such circumstances, we hold that the North Star knives did not infringe Claims 1 through 8 of Lees patent in suit.

■ Had Claim 13 been allowed, it might well have covered the one part accused North Star blade, but since it was rejected and cancelled by the applicant, the assignee of applicant is estopped to broaden by interpretation, the claims of its patent to embrace that which was given up in the Patent Office.

Pertinent also is the statement in Weber Electric Co. v. E. H. Freeman Electric Co., 256 U.S. 668, at pages 677–678, 41 S.Ct. 600, 603, 65 L.Ed. 1162, "Having thus narrowed his claim against rotary movement in order to obtain a patent, the patentee may not by construction, or by resort to the doctrine of equivalents, give to the claim the larger scope which it might have had without the amendments, which amount to a disclaimer of rotation as an operative feature of his device."

That part of the judgment of the District Court which held the claims of the patent in suit, No. 2,659,212, to be valid, will be affirmed; also, that part of the judgment dismissing plaintiff's claim for damages by reason of threats of suit by defendant, will be affirmed; that part of the judgment holding Patent No. 2,683,-357 to be invalid, will likewise be affirmed; that part of the judgment that the counterclaim of defendant, Kent Industries, Inc., for an injunction and damages by reason of threats of suit by plaintiff, be denied and dismissed, is likewise affirmed. That part of the judgment of the District Court which held that Claims 1 through 8 of the patent in suit were infringed by North Star knives and tools, will be reversed; likewise reversed is the holding of the District Court that plaintiff came into court with unclean hands.

Plaintiff will pay the costs in this Court except that one-half ($\frac{1}{2}$) of the costs of printing appellant's appendix shall be paid by Akshun Manufacturing Company, defendant-appellee.

Affirmed in part; reversed in part.