Ernst Johan Jens HENRIKSEN and W.
A. Sheaffer Pen Company, Plaintiffs-
Appellees,

v.

CORY CORPORATION, Defendant-
Appellant.

No. 14070.

United States Court of Appeals
Seventh Circuit.

Jan. 20, 1964.

Rehearing Denied Feb. 26, 1964.

William J. Stellman, Ernest A. Wegner, William R. McNair, Chicago, Ill., for defendant-appellant; Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill., of counsel.

Fred T. Williams, James R. Dowdall, Thomas E. Smith, Chicago, Ill., for plaintiffs-appellees; Pendleton, Neuman, Seibold & Williams, Chicago, Ill., of counsel.

Before HASTINGS, Chief Judge and DUFFY and CASTLE, Circuit Judges.

DUFFY, Circuit Judge.

This is a suit alleging infringement of Henriksen Patent No. 2,678,634 issued on May 18, 1954, and entitled "Writing Instrument."

Co-plaintiff, W. A. Sheaffer Pen Company, acquired from Henriksen an exclusive right to make, use and sell in the United States, writing instruments embraced within the scope of the claims of the Henriksen patent.

The patent in suit relates to the construction of a ballpoint pen. The specification describes the pen as including an ink reservoir and a writing ball mounted in a nib in the forward end of the reservoir. Two vents are provided in the rear end of the reservoir in order to prevent a vacuum from forming in the air space above the ink as the ink is withdrawn from the reservoir during the writing operation.

The defendant asserts the invalidity of the patent in suit, claims non-infringement and urges as a further defense, the alleged misuse of Henriksen Patent No. 2,678,634.

The principal issue in the suit pertains to what is designated as the "follower." In the writing instrument described in the patent in suit, during writing, ink is fed by gravity to the writing ball. The diameter of the reservoir is such that if the pen is inverted, the ink would normally flow rearwardly through the vent and out of the reservoir. To prevent such a flow of the ink, a follower is inserted in the reservoir and is positioned on the upper surface of the ink. Another

purpose of the follower is to prevent air mixing into the ink which might form bubbles and thus interfere with the writing functions of the pen.

The follower is frequently referred to as "follower mass." This follower must be other than ink and is of such a character that it does not mix with ink.

The pens manufactured and sold by defendant all have an ink reservoir, a writing ball and a follower. However, defendant claims that its follower has a composition different from the one claimed in the patent in suit, and hence there is no infringement.

Henriksen, the patentee, does not claim to be the originator of ballpoint pens or of such pens with a follower. All of the claims of the Henriksen patent are directed to a follower which is "pulpy."

On July 1, 1955, plaintiff Henriksen granted to co-plaintiff, W. A. Sheaffer Pen Company, a license which was designated "exclusive." Under the terms of the license agreement, Sheaffer was required to grant licenses to seven other pen manufacturers who were named in the license. One additional licensee was provided for, who was to be selected by mutual agreement of Sheaffer and Henriksen. The license to Sheaffer specified the precise nature and form of the sublicenses which Sheaffer was required to grant. Included was the provision that such sublicensees must accept a license not only under the patent in suit, but under various foreign patents, and to pay minimum royalties on both United States and foreign sales.

The District Court held the patent in suit valid, and that it was infringed by defendant's writing instrument. Also, the District Court failed to find that plaintiffs had misused the patent in suit.

■ Although defendant's claim of invalidity was strongly urged in the District Court, that issue has been virtually abandoned on this appeal. In any event, we are of the view that the finding and conclusion of the District Court that the patent is valid, is justified by the record before us.

On the question of infringement, it is undisputed that defendant's follower is composed of Texas Star "O" grease.[1] This grease is a common lubricating grease and, therefore, is a "greasy substance." Defendant strongly urges that Henriksen clearly disclaimed followers which were of a greasy substance, and that he is now attempting to assert that the "pulpy" claims in the patent in suit cover followers made up from a greasy substance.

■ Defendant relies on the well-established principle that a patentee cannot regain in court, claims covering devices which he specifically abandoned in the Patent Office. North Star Ice Equipment Company v. Akshun Manufacturing Company, 7 Cir., 301 F.2d 882, 886.

As originally filed, Henriksen's application described the followers in this language:

"6 is a lid or follower slidably mounted within the ink reservoir 3 adjacent the surface of the ink or paste 7 contained therein. This lid or follower which may be a cylindrical body of small weight f. inst. a body of light metal or a solid or semi-pasty body of a composition of paraffin or may consist of a substance having approximately the same viscosity as the ink but of such a nature that it is unable to mix therewith, is adapted to prevent the air admitted through the air intake 5 to contact the surface of the ink 7 and also to prevent the ink from flowing from the reservoir into the interior of the barrel.

"Alternatively the lid or body 6 may consist of a layer of viscous or pulpy mass of substantially the same viscosity as the ink and having a color which is distinctly different from the color thereof, thereby providing means for advertising the user when the ink in the reservoir is

---

1. In the transcript and in appellees' brief, the grease is referred to as Texas Star "O" grease. In appellant's brief it is called Texaco Star "O" grease.

approaching exhaustion which will become apparent from the change of color on the writing paper when the pulpy mass above the ink column is extracted through the ink feeding channel to the writing ball."

The original specification thus appears to divide followers into two groups. In the first, the follower is a body of light metal or a solid or semi-pasty body of a composition of paraffin; and, in the second, the follower may be a viscous or pulpy mass similar in viscosity to the ink, but of a different color so as to advise the user when the ink in the reservoir is near exhaustion.

Some two years after the filing of the original application, Henriksen added the following three claims:

"28. In an ink reservoir for ball point fountain pens including an ink column within said reservoir; a viscous mass adjacent the surface of said ink column and providing an air tight follower above said ink column within said reservoir, said viscous mass being of such a nature that it is unable to mix with said ink.

"29. In an ink reservoir for ball point fountain pens including an ink column within said reservoir; *a layer of a greasy substance* above the surface of said ink column, said greasy substance forming an air tight follower capable of sliding within said reservoir following the surface of said ink column, the nature of said greasy substance being such that it is unable to mix with said ink.

"30. In an ink reservoir for ball point fountain pens including a col-

umn of pulpy ink within said reservoir; *a layer of a pulpy mass* on the surface of said ink column, said pulpy mass having substantially the same viscosity as the pulpy ink and forming a slidable follower within said reservoir, said pulpy mass and said pulpy ink being immiscible with each other." (Emphasis supplied).

In arguing these new claims, Henriksen took the position that Claim 29 is limited to followers which are "greasy"; that Claim 30 is a claim to a different species in one of which the follower is "pulpy" while Claim 28 is the generic claim covering both species, stating: "Claims 29 and 30 are directed to the species of a greasy substance and pulpy mass, respectively, as species to which Claim 28 is generic."

In the same amendment, after emphasizing that "pulpy" is something different from "greasy", applicant stated: "Applicant further elects as a single species for the lid a lid of pulpy mass in the event that no generic claim should be found allowable." This election of species was made under Rule 41 [2] of the Patent Office.

Under Rule 41 of the Patent Office, where generic claims are rejected and claims to independent species remain, the applicant must elect a single species "to which his claims shall be restricted." Henriksen elected the "pulpy" species.

Claims 28, 29 and 30 were rejected by the Patent Office on the prior art, were reargued by the applicant, again rejected by the Patent Office, and were finally cancelled by Henriksen who substituted therefor Claim 31 (the latter became Claim 1 of the Patent), which claim called for the follower to be "pulpy."

---

2. "41. Two or more independent inventions cannot be claimed in one application; but where several distinct inventions are dependent upon each other and mutually contribute to produce a single result they may be claimed in one application: *Provided,* That more than one species of an invention, not to exceed three, may be claimed in one application if that application also includes an allowable claim generic to all the claimed species.

In the first action on an application containing a generic claim or claims and claims to more than one species thereunder the examiner, if he is of the opinion after a complete search that no generic claim presented is allowable, shall require the applicant in his response to that action to elect that species of his invention to which his claims shall be restricted if no generic claim is finally held allowable."

We agree with plaintiffs that, generally speaking, one device is an infringement of the other if it performs substantially the same function in substantially the same way to obtain the same result. In other words, if two devices do the same work in substantially the same way and accomplish the same result, they are the same even though they may differ in name, form and shape.

In the case at bar, we would hold there was infringement of the patent in suit by defendant's pen were it not for the file wrapper estoppel and Henriksen's election under Rule 41 of the Patent Office whereby Henriksen clearly abandoned a "greasy" follower and limited his patent to the "elected species" where the follower is "pulpy."

Pertinent is the language in Hubble v. United States, 179 U.S. 77, at pages 83–84, 21 S.Ct. 24, at page 27, 45 L.Ed. 95 where the Court stated: " * * * [L]imitations imposed by the inventor, especially such as were introduced into an application after it had been persistently rejected, must be strictly construed against the inventor and in favor of the public, and looked upon as in the nature of disclaimers."

Also pertinent on this point is the statement of this Court in North Star Ice Equipment Company v. Akshun Manufacturing Company, 7 Cir., 301 F.2d 882, 886: "Had Claim 13 been allowed, it might well have covered the one part accused North Star blade, but since it was rejected and cancelled by the applicant, the assignee of applicant is estopped to broaden by interpretation, the claims of its patent to embrace that which was given up in the Patent Office."

It is urged that we are bound by the District Court's findings. It is true there were three findings below which state or imply that grease may be considered as a pulpy mass. All of the findings in the instant case were entered in the precise form submitted by plaintiffs' counsel. The District Court did not file an opinion or otherwise discuss the applicable law.

The situation here is similar to that in a case recently considered by this Court. In Taylor-Reed Corporation v. Mennen Food Products, Inc., 7 Cir., 324 F.2d 108, where the judgment below was reversed on the ground of file wrapper estoppel. We said at page 111 of 324 F.2d:

"The district court made a number of findings of fact contrary to the conclusion we have reached. Since we are able to resolve this question on the basis of documentary evidence, the findings of the district court on this issue are deprived of the degree of finality which would otherwise attach under Rule 52(a) [citing authorities]. We hold, therefore, that such contrary findings on this proposition must be set aside."

Construing the patent in suit in view of its file wrapper history, we hold the District Court was in error in finding and concluding that defendant's pen infringed the claims of the patent in suit. We hold more specifically, defendant's accused writing instruments known as Autopoint 3–X, Autopoint Cargo and Autopoint Jetliner ball point pens did not infringe the patent in suit.

The third point raised by defendant is the alleged misuse of the patent in suit. Defendant relies upon the license agreements per se. The claim of misuse is confined to two provisions of the license agreement, 1) an alleged "package" licensing program which is said to require the licensee to take licenses under foreign patents as a condition to receiving a grant of a license under the patent in suit, and 2) an alleged "veto" power given to Sheaffer over the grant of an additional license to one unnamed potential licensee.

It was not until June 21, 1961 that defendant filed an amended answer which alleged plaintiffs had misused the Henriksen patent. In the findings of fact, the District Court found there was no evidence that plaintiffs have collaborated in an attempt to control ball point pens or other items not properly included within the scope of the Henriksen patent. Further, that there is no evidence of any

conspiracy to restrain trade in unpatented items.  Also, that there is no evidence that Sheaffer grants sublicenses only to larger manufacturers of ball point pens. As a conclusion of law, the Court determined that plaintiffs had not made any agreements or engaged in any activities which constitute a misuse of the patent in suit.

Plaintiffs point out that the two items now relied on by defendant to show misuse of the patent in suit were asserted for the first time in a "Supplement to defendant's trial brief" served only four days prior to the commencement of the trial.  This was four years after defendant's original answer and counterclaim were filed.  There never has been a pleading of the specific items of misuse now asserted.  There was no explanation by defendant for this long delay in raising these new matters.  We hold the Court's rulings on evidence relating to these impleaded items were not error and we overrule the defense of misuse.

Due to our holding of non-infringement, the judgment of the District Court is

Reversed.