The **PROCTOR–SILEX CORPORATION,**
Plaintiff,

v.

**ARVIN INDUSTRIES, INC.,** Defendant.
No. IP 65–C–182.

United States District Court
S. D. Indiana,
Indianapolis Division.
March 17, 1969.

cation filed April 12, 1950 by Harvey E. Hortman, Jr. Prior to issue of the patent, the application therefor was assigned by Hortman to Proctor Electric Company, and the patent issued to that assignee. The present plaintiff, Proctor-Silex, Inc., a corporation of New York with its principal offices in Philadelphia, Pennsylvania is the successor in interest of Proctor Electric Company through a series of corporate mergers and assignments. Proctor-Silex, like Proctor Electric before it, is a manufacturer of ironing tables as well as other household appliances. The term "plaintiff" as used hereinafter comprehends both of those companies.

The defendant, Arvin Industries, Inc., is an Indiana corporation having its principal office at Columbus, Bartholomew County, Indiana, and it manufactures many products, including ironing tables.

Defendant denies infringement and validity, and seeks a declaration that claims 9, 10 and 11 are invalid and have not been infringed by it.

This Court has jurisdiction of the parties and subject matter of this action under 35 U.S.C. § 281 and 28 U.S.C. § 1338 (a) and § 1400.

Trial of this action before the Court occupied five days, June 26–30, 1967. Thereafter, the case was briefed and argued orally on the ninth day of March 1968. The following is a Memorandum Opinion and contains the Findings of Fact and Conclusions of Law in accordance with Rule 52(a) Federal Rules of Civil Procedure.

It is uncontested that the plaintiff marked all or essentially all of its ironing table cartons immediately upon issuance of the patent to give constructive notice to the public, including Arvin. Defendant admits that it was given actual notice of infringement by letter dated June 18, 1964.

The issues before the Court are:

1. Are claims 9, 10 and 11 of the patent in suit valid.

2. Do the defendant's ironing tables of types represented by PX–1A,

Bose, Buchanan, McKinney & Evans, (by William M. Evans), Indianapolis, Ind., and Howson & Howson, Philadelphia, Pa., for plaintiff.

Trask, Jenkins & Hanley (by Jack Hanley), Indianapolis, Ind., Cadick, Burns, Duck & Neighbours (by James M. Nicholson), Indianapolis, Ind., for defendant.

## MEMORANDUM OPINION, FINDING OF FACT, AND CONCLUSIONS OF LAW

NOLAND, District Judge.

This is an action for patent infringement. The plaintiff complains that certain ironing tables manufactured and sold by the defendant infringe claims 9, 10 and 11 of U. S. Letters Patent No. 2,-896,347 issued July 28, 1959 on an appli-

2A and 3A infringe claims 9 and 10, and does defendant's ironing tables of the type represented by PX–1A also infringe claim 11 of the patent in suit.

3. Has the plaintiff been guilty of laches and estoppel barring it from any recovery or relief in this action.

*The Patented Table*

The table shown in the Hortman patent is of the crossed-leg type. One leg is pivotally fixed to the table top near the rear end thereof, while the other leg has a sliding pivot pin guided for movement backwards and forwards to vary the height of the table and permit complete collapse of the legs beneath the top. The location of the sliding pin is controlled by a height adjustment mechanism including a first latch member slidable with a pivot pin and having a series of holes each of which can receive a second latch member on the top. The table is described · as follows by the claims in suit:

"9. In an adjustable and collapsible ironing table, a table top of substantially uniform width over the greater part of its length and having a tapering portion forwardly beyond the portion of uniform width, a pair of interconnected crossed legs providing an adjustable and collapsible support structure for said top, a fixed transverse pivot pin connection between the rearward part of said top and the upper end of one of said legs, a transverse pivot pin connected to the upper end of the other leg, retaining guide means on said top extending lengthwise thereof from a forward location within said tapering portion to a location in the vicinity of the longitudinal center of the table top, and slidably supporting the last-mentioned pivot pin, and an adjustment mechanism for establishing different positions of the slidable pivot pin to provide different height adjustments of the table, said mechanism including a manual control latch member fixed on said top near the rearward end of said guide means and a cooperating latch member con-

nected to the upper end of said other leg.

"10. An ironing table according to claim 9, wherein said manual control member is provided with a handle disposed below and within the confines of the table top.

"11. In an ironing table, a table top, two transverse end braces and a transverse center brace fixed to the table top for strengthening the ironing table in a transverse direction, hinge brackets fixed to one of the end braces, two guide members and a track member fixed between the center brace and the other end brace and extending longitudinally of the table top, a rack slidably mounted within the track, adjustable support members connected to said hinge brackets and to said guide members, and means including said rack for controlling adjustment of said support members."

*Plaintiff's Activities*

The evidence showed that prior to the time Hortman first became involved in plaintiff's development of an ironing table, plaintiff made a survey that indicated to it that there were no really desirable ironing tables on the market, whereupon plaintiff set about to develop an ironing table better adapted to comfortable use by a typical housewife. After it had already been decided to produce such a table. of metal within thin-wall legs, and after mock-ups had been made of a table with crossed legs with one of said legs pivoted to the top on a fixed axis at the rear of the top, Hortman, an engineer and employee of plaintiff, started his development work and carried on from there to produce the table disclosed in the patent in suit.

The drawings of the patent in suit show a structure essentially like the Proctor Model 60 ironing table which was exhibited as PX–100A. In 1953, plaintiff changed from its Model 60 ironing table, PX–100A type, to an ironing table having a different adjusting mechanism as exemplified in plaintiff's ironing tables shown as PX–110, 111,

112, and 113. The change effected was from a "rack" and "latch member" to a "rod" and "jam plate" in the adjusting mechanism.* The rack had a number of finite settings to thus provide a finite number of positions of adjustment, whereas the rod and jam plate used frictional gripping to thus provide an infinite number of positions of adjustment. With the elimination of the rack and its associated latch, none of the claims in suit applied to the new tables.

### Defendant's Accused Tables

Plaintiff alleges that defendant's ironing tables as characterized by PX–1A infringe claims 9, 10, and 11 of the patent in suit. Typical of defendant's ironing tables which it is contended infringe claims 9 and 10 only, are those marked as Exhibits PX–2A and PX–3A. All these tables are of the crossed leg type, but all differ from the table shown in the Hortman patent.

The PX–1A table employs a latch type adjusting mechanism in which the pivot pin on the adjustable leg is not independently guided by means on the top as is the case in the Hortman patent. Instead, it is pivotally connected to a slide which moves in a guide secured to the top. Unlike the slidable, bolt-type manually controlled latch member of Hortman, which is mounted on the top, the latch member of PX–1A is pivoted and supported entirely on the guide. It is formed of large wire and has a bent nose that can engage any of a series of openings in the slide.

The adjusting mechanism of the PX–2A table resembles that of the PX–1A table in that the adjustable leg is pivoted directly to a guided slide. Unlike the PX–1A table, however, the adjusting mechanism of the PX–2A table provides an infinite type of height adjustment. Supported directly from the slide-guide are a pair of jointly actuated dogs which frictionally grip the sides of the slide to provide an infinite number of table heights.

In the PX–3A table, the adjusting mechanism is of the "rod and jam plate" type previously described, and like the PX–2 A table, provides an infinite type of height adjustment.

### Validity of Claims 9, 10, and 11 of Patent No. 2,896,347

█ Adjustable and collapsible crossed leg ironing tables were not new with plaintiff, for the prior art introduced by defendant contains numerous examples of such tables dating at least as far back as 1880 (Zwiebel 232,100). Such prior tables include some in which, as in the Hortman patent, the pivot pin on the adjustable leg is directly guided by means on the table top, i. e. Miller 2,517,797, as well as others in which the adjustable leg is pivotally connected directly to a guided slide, i. e. Rock 431,530, as well as others in which the adjusting mechanism includes clamping members for frictionally binding the adjustable leg in an infinite number of different positions of adjustment, i. e. Glass 1,408,880.

█ While a presumption of validity attaches to the patent in suit, that presumption is greatly weakened, if not destroyed, where it is shown, as it is here, that the most pertinent prior art was not cited by the Patent Office Skirow v. Roberts Colonial House, Inc., 7 Cir., 361 F. 2d 388.

Hortman entered a crowded field. The prior art patents mentioned above are but a few examples of a much larger number of prior patents showing adjustable, collapsible cross leg ironing tables. All the features required by the claims in suit were old, not only individually but in many cases in combinations. Hortman may have changed the form, the location, or the arrangement of old elements, but in the structure defined by his claims 9, 10, and 11 he accomplished no new or unobvious result. Such changes as he made and described in those claims would have been obvious at the time of his development to a person having ordi-

---

* A cross leg ironing table with a rod and jam plate adjusting mechanism is shown in U. S. patent No. 804,244 (1905).

nary skill in the art to which that development pertains.

Miller patent No. 2,517,696 which issued August 8, 1950 on an application filed September 9, 1946, well ahead of the earliest activity of the patentee Hortman, shows an adjustable and collapsible ironing board of the crossed leg type. In Miller, a pivot pin on the upper end of the adjustable leg is slidably received and retained in association with the top by a longitudinally extending guide long enough to permit adjustment of the legs from a completely collapsed condition at the under side of the top to a fully extended, operating position. The position of that pin is controlled by a latch mechanism including a manually controlled member which is pivoted to the top, extends along the path of movement of the pivot pin, and is provided with a series of notches any one of which can receive the pivot pin. Miller's latch member is located wholly within the confines of the table top, and is provided with a handle disposed close to the edge of the top. The Miller patent, which was not cited by the Patent Office against the Hortman application, is a direct anticipation of each of claims 9 and 10 in suit, unless it can be distinguished therefrom because it lacks a "cooperating latch member" other than the pivot pin with which the manual latch member cooperates.

Plaintiff's expert attempted to distinguish claims 9 and 10 from Miller on the grounds that Miller's guide did not prevent movement of the pivot pin laterally of the table top, that the rear end of the guide was not in "the vicinity of the longitudinal center of the table top," and that the manual latch member was not mounted on the top "near the rearward end" of the guide. Claims 9 and 10 do not bring out the first distinction, and as to the other two, the expert's testimony was contradictory within itself and contradicted by plaintiff's expert. As between the respective experts, the Court found that of plaintiff's expert the more convincing and adopts it.

Rock patent No. 431,530 was cited against the Hortman application but not until after the patent claims in suit had been allowed. The Rock patent shows an adjustable crossed leg table, in which each leg was pivoted to a guided slide held in adjusted position by a control member mounted on the slide-guide. In that respect Rock differed from the claims in suit, but his arrangement was that employed in defendant's PX–1A and 2A tables. Thus, if claims 9 and 10 could be construed to be broad enough to read on defendant's tables, as plaintiff contends, they are surely invalid over Rock.

Glass patent No. 1,408,880 which was not cited by the Patent Office during the prosecution of the Hortman patent, discloses a cross leg ironing table which is adjustable in height through a friction or clamp type mechanism that provides an infinite number of heights. The Glass table collapsed in a manner different from that employed by Hortman and defendant; but when erected, it fully anticipated claims 9 and 10 in suit except that its top was of different shape than those claims specify and that its adjusting mechanism was of the infinitely adjustable clamp type as used in defendant's PX–2A and 3A tables instead of the latch type shown and required by claims 9 and 10 in suit.

With respect to claim 11 in suit, defendant relies for invalidity on the Fay patents 2,291,614, 2,319,396 and 2,325,493; Foster patent 521,158; and Reed patent 1,359,527. The Fay patents show no adjusting mechanism, but they resemble the Hortman table in showing metal ironing table tops provided with transverse end and center reinforcing braces, all formed of metal. Patent 2,308,807 shows such braces provided with brackets for attachment of the supporting legs.

The Foster and Reed patents are complete anticipations of claim 11 except in two minor respects. Where the claim recites brackets through which one leg is connected to the one end brace, Foster and Reed connect the leg directly to the end brace; and where the claim requires both two guide members and a track, Foster and Reed use two guide members

alone to perform the functions performed by the claimed guide members and the track. In view of Fay, there is no novelty in leg-attaching brackets on transverse braces, and the failure of Foster or Reed to show two guide members as well as a track is of little consequence here in view of the fact that defendant's PX–1A table has a single sheet metal member serving as both a guiding means and a track.

In the opinion of the Court the plaintiff successfully made use of the prior art to design an ironing table which incorporated known mechanical principles and devices which would have been obvious to persons skilled in the art. Any differences between the structure set forth in claims 9, 10, and 11 and the prior art were minor in character and would be obvious to one having merely ordinary skill in the ironing table art.

Therefore, it is the opinion of the Court that the subject matter of the claims in suit was fully anticipated by the prior art, and claims 9, 10, and 11 of the patent in suit lack the necessary novelty required in 35 U.S.C. § 102 and are invalid thereunder. Furthermore, said claims do not possess the required attribute of invention as being nonobvious to a mechanic having ordinary skill in the art, as required by 35 U.S.C. § 103.

This Court would point out what was stated in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., et al., 340 U.S. 152, 71 S.Ct. 127, 130, 95 L. Ed. 162:

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly.

"The Court of Appeals and the respondent both lean heavily on evidence that this device filled a long-felt want and has enjoyed commercial success. But commercial success without invention will not make patentability."

Evidence presented on behalf of defendant shows in a conclusive fashion how the patentee Hortman made extensive use of old elements and features which produced no special new or unobvious results. Therefore, claims 9, 10, and 11 are wholly invalid under 35 U.S.C. § 103.

Claims 9 and 10 require the retaining guide means to be "in the vicinity of the longitudinal center of the table top" and the manual control latch member to be "near the rear end of the guide means." Neither of these locations have antecedent descriptions in the specification. The Court further notes that plaintiff's expert gave two different meanings to "vicinity" in attempting to distinguish the claims from the Miller reference.

The Court further notes that claims 9 and 10 are devoid of any limitations directed to means for supporting the rack ("cooperating latch member" in the claims) from the top. Yet plaintiff's expert testified that such a supporting member (track) in the specification was necessary to the operation of the adjusting mechanism, and defendant's experts testified that such a supporting member was "completely essential."

It is therefore the opinion of this Court that the vagueness, ambiguity and incompleteness of claims 9 and 10 render them invalid under 35 U.S.C. § 112.

*Commercial Success*

It would appear from the evidence that Proctor's Model 60 ironing table revolutionized the ironing table industry. The new ironing table sold at a retail price of

$12.95 or about three times the average price for ironing tables on the market in the late summer of 1949. The advantages of the new ironing table were the ease of opening and closing; the easy height adjustment; that it was adjustable for sit-down or stand-up ironing; that the legs were off-set so that you could sit down to it; that it was sturdy and yet lightweight; and that it was maneuverable and easy to handle. Plaintiff's witness Tiers also testified that the ventilated top, wheels, adjustable foot and swingable extension panels were advantageous features of plaintiff's tables. In addition, the evidence showed that plaintiff conducted extensive sales promotion activities, increased its advertising with additional sales, improved its distribution, and from 1953, when the Model 60 table was discontinued, stressed infinite height adjustment in its sales and advertising program. All of these things had a definite impact and resulted in widespread market acceptance.

After plaintiff demonstrated that the market would accept a premium type ironing table, the defendant and other ironing table manufacturers soon put similar type ironing tables on the market featuring ease of handling, adjustable X-frame legs for easy height control for stand-up or sit-down ironing. Further, all of the ironing tables referred to were more attractive in looks and materials as well as in their comfortable use. This resulted in plaintiff's sales being "a little better than" the industry trend.

■ Any commercial success achieved by plaintiff in the sale of its ironing tables can not take the place of invention. Great Atlantic & Pacific Tea Co. v. Supermarket Corp. (Supra); H. W. Gossard Co. v. J. C. Penney Co. 304 F.2d 515, 517 (CA 7 1962). Further, it is the opinion of this Court that any such commercial success achieved by plaintiff was based upon plaintiff's marketing acumen and upon features of its ironing table other than those to which the asserted claims are directed. If the Court entertained any doubt as to the invalidity of the claims in suit, the commercial success of plaintiff's tables is therefore not such as would justify resolving that doubt in favor of the Hortman patent. Marconi Wireless Tel. Co. of America v. United States, 320 U.S. 1, 36, 63 S.Ct. 1393, 87 L.Ed. 1731; P. Laboratories, Inc. v. Huge, 7 Cir., 371 F.2d 231, 236; Schreyer v. Chicago Motocoil Corp., 7 Cir., 118 F.2d 852, 857.

### The Issue of Infringement

■ In approaching the question of infringement, the Court makes its determination based upon observation of the ironing tables presented in evidence and demonstrated by counsel and their respective experts.

The Court further has the benefit of a review of the transcript; the depositions; the testimony of the respective experts, Mr. Harold Hood and Mr. J. T. Wilson; testimony of the other witnesses; and the excellent briefs.

It was impossible to escape the factual finding that although there may have been some similarity in appearance between the defendant's ironing tables and those of the plaintiff, defendant merely made use of the prior art and manufactured an ironing table with a different application of mechanical principles and devices.

Specifically as to the issues of infringement:

(a) Does defendant's ironing table PX–1A infringe claims 9, 10, and 11, and

(b) Does defendant's ironing table PX–2A and PX–3A infringe claims 9 and 10.

Claims 9 and 10 require a guide means slidably supporting the transverse pivot pin, a latch member (slide) connected to the adjustable leg, and a manual latch member fixed on the top near the rear end of the guide means. In contrast, the only guide means in the PX–1A table is one for the slide to which the adjustable leg is pivoted, and the manual latch member is on the slide-guide, all as in Rock. Moreover, the manual latch member is located near the center oi the guide means.

Further, as to whether PX–1A infringes claim 11, it is determined that said defendant's ironing table does not. In no way, does the single track in PX–1A have the required relationship to the specified braces on the top as the separate pair of guide members and track required in claim 11.

The PX–1A table, employing a different kind of structure than that required in claims 9, 10, and 11, also lacks the identity of means, operation, and result necessary to constitute an infringement of said claims. Independent Pneumatic Tool Co. v. Chicago Pneumatic T. Co., 194 F.2d 945 (CA7 1952); Skirow v. Roberts Colonial House, Inc., 361 F.2d 388 (CA 7 1966). It is therefore concluded that defendant's PX–1A ironing table does not infringe any of claims 9, 10, and 11.

It is now necessary to consider whether defendant's ironing tables as characterized by PX–2A and PX–3A infringe claims 9 and 10. It is determined that they do not.

Claims 9 and 10 cannot be read on plaintiff's ironing tables PX–2A or PX–3A because neither of these ironing tables has the latch mechanism called for in the claims. Rather, each of these structures follows the prior art teachings of Glass 1,408,880 in providing a frictional clamping action which provides an infinite type of height adjustment. Instead of using the latch arrangement required in the claims which provides a step-by-step adjustment, the PX–2A table employs frictional gripping dogs and the PX–3A table employs a rod and jam plate. Such a clamping type arrangement which provides infinite height adjustment was described by the patentee Hortman as a different type of latch mechanism than he used.

In addition to failing to meet the specific limitations of claims 9 and 10, the PX–2A and 3A tables, employing their different kind of adjusting mechanism, also lack the identity of means, operation and result necessary to constitute an infringement of said claims. Further, the unitary guiding and adjustment mecha-

nism of the PX–2A table, like that employed in the PX–1A table, specifically lacks the necessary identity with the separate guiding and adjusting means required in claims 9 and 10.

*File Wrapper Estoppel*

■■ Defendant has contended that claims 9, 10, and 11 must be strictly construed to their specific language under the doctrine of file wrapper estoppel. The evidence is conclusive that this contention must be sustained.

Prior to the submission of the claims which became claims 9 and 10, the Hortman patent application contained a claim (application claim 1) which required "movable latch means for retaining any adjustment for a desired operating height." The Patent Office rejected that claim as "broader than applicant's invention" because the movable latch shown in the application disclosure "does not retain in any position" but provided adjustment only "by discrete, determinable intervals." Plaintiff acquiesced in that rejection and cancelled the claim.

In a somewhat similar manner, after the allowance of the claims that became 9 and 10 in suit, plaintiff submitted application claim 29 which eliminated the two "latch" members and merely required a mechanism including "a member." In addition, application claim 29 merely required the member to be "supported by said top" not fixed on the top as required in claims 9 and 10. That claim was abandoned by plaintiff upon its rejection.

At the same time that application claim 29 was presented in its application, plaintiff presented application claim 30 to acquire a broader protection than it had from corresponding claim 11. Application claim 30 eliminated the requirement of the "track member" in addition to the two guide members. When it was rejected by the Patent Office, plaintiff acquiesced in the rejection and cancelled application claim 30.

The law is clear that a patent claim must be construed in the light of the history of the application in the Patent Office, and a patentee can not claim in the

courts a broader interpretation of a claim than what he surrendered in the Patent Office. North Star Ice Equipment Co. v. Akshun Manufacturing Co., 301 F.2d 882 (CA 7 1962); Its Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 47 S.Ct. 136, 71 L.Ed. 335. Faced with its acquiescence in the Patent Office rejections of application claims 1, 29 and 30, plaintiff can not now assert for the claims in suit a scope broad enough to cover ironing tables having an infinite height adjustment like PX–2A and 3A, or tables like PX–1A and 2A, in which the manual control member is supported in and near the center of the slide guide or tables in which there is not both a track and two separate guides like PX–1A. The defendant has properly relied upon plaintiff's file wrapper estoppel and the implicit admission by the plaintiff therein. The file wrapper history bars plaintiff from asserting for any claim in suit a construction broad enough to cover the accused tables.

### Laches

The defendant makes a strong argument on the issue of laches. Under the circumstances, the Court is of the opinion that the legal issues are clearly decided in favor of the defendant and resort to the defense of laches is unnecessary.

### Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter of this action by virtue of the patent laws of the United States and the Judicial Code.

2. Claims 9, 10 and 11 of Letters Patent No. 2,896,347 are invalid and void under 35 U.S.C. § 102 for the reason that the claimed subject matter is fully anticipated by the prior art.

3. Claims 9, 10 and 11 of Letters Patent No. 2,896,347 are invalid and void under 35 U.S.C. § 103 for the reason that any differences between the claimed subject matter and the prior art are such that the subject matter as a whole would have been obvious at the time that the invention was made to a person having ordinary skill in the ironing table art.

4. Claims 9, 10 and 11 of Letters Patent No. 2,896,347 are invalid and void under 35 U.S.C. § 112 for the reason that said claims are ambiguous, vague, and incomplete in their recital of the subject matter sought to be protected.

5. Claims 9, 10 and 11 of Letters Patent No. 2,896,347 are not infringed by defendant's ironing tables characterized as PX–1A, PX–2A and PX–3A.

6. Claims 9, 10 and 11 of Letters Patent No. 2,896,347 are limited by file wrapper estoppel to a scope commensurate with the specific language employed therein.

7. Defendant is entitled to judgment declaring that claims 9, 10 and 11 of Letters Patent No. 2,896,347 are invalid and void.

8. That the complaint be dismissed.

9. Defendant is awarded its costs and disbursements, with costs to be assessed against plaintiff.